# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JORGE ALBERTO HERNANDEZ, SYLWIA CIEPLINSKA, DJURAYEVA MUKADDAS, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | **Case No.:** 3:20-cv-128<br><br>**CLASS ACTION**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br>1. FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 *et seq.* |

## CLASS COMPLAINT

COMES NOW, the Plaintiffs Jorge Alberto Hernandez, Sylwia Cieplinska, Djurayeva Mukaddas ("Plaintiffs"), on behalf of themselves and all similarly situated individuals, and allege the following claims:

## INTRODUCTION

1. This is a consumer class action brought against Defendant Equifax Information Services ("Equifax") for willful violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* This lawsuit challenges Equifax's failure to process a consumer dispute as required by the FCRA on the false basis that the consumer's social security number is associated with a person who is deceased and therefore Equifax refuses to process the consumer's dispute(s) as required under 1681i without the consumer producing a confidential benefits report from the Social Security Administration.

1

## JURISDICTION AND VENUE

2. Jurisdiction of the court arises under 28 U.S.C. § 1331; 15 U.S.C. § 1681.

3. Venue is proper pursuant to 28 U.S.C. 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

4. Defendant is a registered business entity with the North Carolina Secretary of State, authorized to transact and does transact business within the geographic confines of the Eastern District of North Carolina. Defendant operates throughout North Carolina, including through related business entities it wholly controls.

5. Personal jurisdiction and venue is established by the presence of Mr. Hernandez and Equifax within the Eastern District of North Carolina.

## PARTIES

6. Plaintiff Jorge Alberto Hernandez ("Mr. Hernandez") is a natural person residing in Charlotte, Mecklenburg County, North Carolina.

7. Plaintiff Djurayeva Mukaddas ("Ms. Mukaddas") is a natural person residing in King County, New York.

8. Plaintiff Sylwia Cieplinska ("Ms. Cieplinska") is a natural person residing in Forest Hills, New York.

9. Each Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and 15 U.S.C. § 1681a(c).

10. Defendant Equifax is a "person" as defined by 15 U.S.C. § 1681a(b) and a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

11. Defendant Equifax has its headquarters located at 1550 Peachtree St. & One

Atlantic Center, Atlanta, Georgia 30309. It has a registered agent Corporation Service Company located in Raleigh, North Carolina, and regularly does business in North Carolina.

12. Defendant acted through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

### Facts Regarding Mr. Hernandez

1. On or about October of 2019, Mr. Hernandez sent a letter to Defendant to dispute credit information on his Equifax credit report.

2. The dispute was bona fide.

3. Instead of investigating the dispute, on or around October of 2019, Defendant responded to Mr. Hernandez's original dispute with a one-page letter including, among other things:

    a. A clear indication that the letter was addressed to Mr. Hernandez by name.

    b. A confirmation that Defendant had received Mr. Hernandez's dispute letter.

    c. The Social Security Administration supposedly had Mr. Hernandez's Social Security number associated with a person reported as deceased.

    d. Instructions for Mr. Hernandez to contact the Social Security Administration and to send Defendant a "Report of Confidential Social Security Benefit Information" form to clarify his current status as well as a special form provided by Equifax.

4. Upon information and belief, Defendant did not conduct a reinvestigation of Mr. Hernandez's dispute as required by the FCRA.

3

5. Upon information and belief, Defendant had no reliable information upon which to form its belief that Mr. Hernandez's social security number was associated with a deceased individual.

6. Mr. Hernandez has not and does not receive social security benefits, nor does he have a pending claim for benefits, thus obtaining such proof from the Social Security Administration was the letter from Equifax was completely non-responsive to Mr. Hernandez's dispute.

7. Mr. Hernandez nonetheless contacted the Social Security Administration, which informed him that because he has not and does not receive social security benefits, nor does he have a pending claim for benefits, it would not provide Mr. Hernandez with a Report of Confidential Social Security Benefit Information.

8. Upon information and belief, Equifax's loose matching algorithms have combined Mr. Hernandez and with another individual.

9. Because Equifax refused and failed to investigate Mr. Hernandez's dispute, the inaccurate information remains on his consumer report.

10. As a result of Equifax's refusal to conduct an investigation, Mr. Hernandez was injured by reducing his credit score and causing him to withdraw from the credit market, harming his credit worthiness and ability to obtain credit.

### Facts Regarding Ms. Cieplinska

11. On or about August of 2019, Ms. Cieplinska sent a letter to Defendant to dispute credit information on her Equifax credit report.

12. The dispute was bona fide.

13. Instead of investigating the dispute, on or around September of 2019, Defendant responded to Ms. Cieplinska's original dispute with a one-page letter including, among other things:

   a. A clear indication that the letter was addressed to Ms. Cieplinska by name.

   b. A confirmation that Defendant had received Ms. Cieplinska's dispute letter.

   c. The Social Security Administration supposedly had Ms. Cieplinska's Social Security number associated with a person reported as deceased.

   d. Instructions for Ms. Cieplinska to contact the Social Security Administration and to send Defendant a "Report of Confidential Social Security Benefit Information" form to clarify her current status as well as a special form provided by Equifax.

14. Upon information and belief, Defendant did not conduct an investigation of the disputed information as required by law.

15. Upon information and belief, Defendant had no reliable information to form the belief that Ms. Cieplinska's social security number was in fact associated with a deceased individual.

16. Ms. Cieplinska's social security number was not, in fact, associated with a deceased individual as confirmed by the Social Security Administration.

17. Shortly after receiving the letter from Equifax, Ms. Cieplinska contacted the Social Security Administration.

18. On or about September of 2019, Ms. Cieplinska received a letter with the form Defendant instructed her to request from the Social Security Administration who then

5

Case 3:20-cv-00128-RJC-DSC   Document 1   Filed 03/02/20   Page 5 of 17

verified:

    a. Ms. Cieplinska did not and has not received benefits in the past.

    b. Ms. Cieplinska did not have a pending claim for benefits.

19. Based on the letter from Equifax, the Social Security Administration supposedly associated the Ms. Cieplinska's Social Security number with a person reported as deceased.

20. The Social Security Administration's letter did not contain any indication that Ms. Cieplinska's social security number was associated with a deceased individual.

## Facts Regarding Ms. Mukaddas

21. On or about August of 2019, Ms. Mukaddas sent a letter to Defendant to dispute credit information on her Equifax credit report.

22. Instead of investigating the dispute, on or around September of 2019, Defendant responded to Ms. Mukaddas's original dispute with a one-page letter including, among other things:

    a. A clear indication that the letter was addressed to Ms. Mukaddas by name.

    b. A confirmation that Defendant had received Ms. Mukaddas's dispute letter.

    c. The Social Security Administration supposedly had Ms. Mukaddas's Social Security number associated with a person reported as deceased.

    d. Instructions for Ms. Mukaddas to contact the Social Security Administration and to send Defendant a "Report of Confidential Social Security Benefit Information" form to clarify her current status as well as a special form provided by Equifax.

23. Upon information and belief, Defendant did not conduct an investigation of the disputed information as required by law.

24. Upon information and belief, Defendant had no reliable information to form the belief that Ms. Mukaddas's social security number was in fact associated with a deceased individual.

25. Ms. Mukaddas's social security number was not, in fact, associated with a deceased individual as confirmed by the Social Security Administration.

26. Shortly after receiving the letter from Equifax, Ms. Mukaddas contacted the Social Security Administration.

27. On or about September of 2019, Ms. Mukaddas received a letter with the form Defendant instructed her to request from the Social Security Administration who then verified:

   a. Ms. Mukaddas did not and has not received benefits in the past.

   b. Ms. Mukaddas did not have a pending claim for benefits.

28. Based on the letter from Equifax, the Social Security Administration supposedly associated the Ms. Mukaddas's Social Security number with a person reported as deceased.

29. The Social Security Administration's letter did not contain any indication that Ms. Mukaddas's social security number was associated with a deceased individual.

30. On or around September 26, 2019, Ms. Mukaddas learned that she was denied credit for which she had applied to PenFed Credit Union.

31. PenFed's letter informed Ms. Mukaddas that its rejection had been based "in whole

or in part on information obtained in a report from…Equifax."

32. Despite the fact that Equifax informed Ms. Mukaddas that the Social Security Administration allegedly had associated her Social Security number with a deceased person and on that basis refused to investigate her bona fide dispute, Equifax nonetheless still sold her consumer report to its third-party subscriber and customer, PenFed.

33. Ms. Mukaddas and Ms. Cieplinska also sent disputes to Experian and Trans Union.

34. Neither Experian nor Trans Union indicated that Ms. Mukaddas's and Ms. Cieplinska's social security number were associated with deceased individuals.

35. Upon information and belief, Experian, TransUnion and Equifax share information about consumers with each other.

36. Equifax's actions have caused all Plaintiffs and the putative class to suffer damages by failing to process disputes as required under 1681i.

37. Equifax failed to conduct reasonable reinvestigations into the Plaintiffs' disputes and have failed to maintain reasonable procedures to assure maximum possible accuracy by refusing to process disputes based on a false claim that Plaintiffs, and the putative class, have social security numbers associated with deceased individuals.

38. Equifax has been on actual notice and has had actual knowledge for many years that its loose matching algorithms frequently combine information about completely different consumers, leading to falsely matching living consumers with dead ones.

39. Equifax does not obtain any information directly from the Social Security Administration, but rather through a third party.

40. Upon information and belief, Equifax's contract with its third-party vendor

disclaims accuracy of social security information.

41. Upon information and belief, despite the fact that Equifax knows that the information it obtains from its third-party vendor may be inaccurate, it refuses to investigate a consumer's dispute in order to save itself money and not based on a legitimate concern for the consumer's rights.

42. Equifax knows that its matching algorithm has problems with certain names, but chooses to not correct its internal problems so that it can make more money.

43. Equifax has been sued repeatedly for its failure to conduct a reasonable reinvestigation based upon its claim that a consumer did not provide sufficient identifying information.

44. Equifax has been sued repeatedly for inaccuracy of information obtained from its third-party vendor that supplies information regarding consumer social security numbers.

45. Equifax has no right to a consumer's confidential social security benefits report.

46. Despite the onerous requirements that Equifax imposed on the consumer Plaintiffs before it would process a dispute, upon information and belief, Equifax readily sells consumer reports about consumers without similar requirements of its customers. For instance, Equifax sells consumer reports to its banking industry and debt collector customers with as little as a name and any previous address.

47. Upon information and belief, Equifax does not make money from conducting reinvestigations, but rather it is an expense. Therefore, Equifax purposely institutes this onerous and unjustified requirement in order to avoid reinvestigation of disputes.

## CLASS ALLEGATIONS

48. The Class. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Brings this action for herself and on behalf of a class (the "Class") initially defined as follows:

All consumers residing in the United States who were the subject of a consumer report (1) in the five years preceding the date of class certification, (2) who sent a dispute to Equifax about an inaccurate item reporting on the consumer's credit report; (3) for whom Equifax failed to conduct a reinvestigation upon receipt of the dispute; (4) until after the consumer supplied a "Report of Confidential Social Security Benefits."

49. Numerosity. FED. R. CIV. P. 23(a)(1). On information and belief, the Plaintiff alleges that Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

50. Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

   a. Whether the Social Security Administration was the actual source of the information associating the Plaintiff with a deceased social security number;

   b. Whether Equifax was reasonable in relying on the information it obtained about consumer social security numbers;

c. Whether Equifax was justified in forcing the consumer to obtain information it requested from the Social Security Administration before it would commence a reinvestigation;

d. Whether the type of information that Equifax required of the consumer was the type of information that was relevant to whether the consumer was deceased;

e. Whether Equifax failed to conduct a reasonable reinvestigation of the consumer's disputes;

f. Whether Equifax informed the furnisher of the social security information about the consumer dispute;

g. Whether Equifax improperly shifted the burden of proving that its report of social security information was inaccurate onto the consumer;

h. Whether Equifax had a procedure in place assure maximal accuracy of the consumer social security information;

i. Whether Equifax had notice that its social security number information was flawed;

j. Whether Equifax's violation was willful and/or in reckless disregard of the consumer's rights.

51. Typicality. FED. R. CIV. P. 23(a)(3). Plaintiffs' claims are typical of the claims of each Class member. Plaintiffs are entitled to relief under the same causes of action as the other members of the Class. Upon information and belief, Equifax sent consumers who were disputing inaccurate social security number information the same form letter;

11

Equifax did not commence the reinvestigation of the disputed reporting until the consumer obtained information from the Social Security Administration For class certification purposes, Plaintiff seeks only statutory and punitive damages. Plaintiffs would only seek individual actual damages if class certification were denied. In addition, Plaintiffs are entitled to the same relief as the members of the class.

52. Adequacy. FED R. CIV. P. 23(a)(4). Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class she seeks to represent; they retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

53. Predominance and Superiority, FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication for the controversy. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the Class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims

based upon a single set of proof in a case

54. Injunctive Relief Appropriate for the Class. FED. CIV. R. P. 23(b)(2). Class certification is appropriate because Defendant has acted on grounds generally to the Class, making it appropriate to award equitable injunctive relief with respect to Plaintiffs and the Class members.

## Claim I: Violations of the Fair Credit Reporting Act (class claim)
## 15 U.S.C. § 1681i(a)(1)

55. The foregoing facts establish that the Defendant willfully violated 15 U.S.C. § 1681i(a)(1) as to the Plaintiffs and to the Class members when it failed to conduct a reasonable reinvestigation of the Plaintiffs' and Class members' disputes and to correct the inaccurate information in its files. Specifically, Defendant failed to immediately investigate and correct its records because they considered Plaintiffs and the Class members as "deceased" when it had actual notice and knowledge that Plaintiffs and the Class members were alive, and required a specialized form of third-party proof to be obtained and submitted by the Plaintiffs and Class members before it would even commence an investigation in violation of the FCRA.

56. As a result of Defendant's violations of 15 U.S.C. §1681, Plaintiffs and each Class member suffered injuries directly traceable to Equifax's refusal to investigate, by Equifax's improper shifting of the responsibility to the consumer to assure its social security information was maximally accurate, and by delaying the reinvestigation of the consumer's disputes while the erroneous and harmful information remained on their consumer reports.

57. Defendant's conduct, actions and inactions were willful, rendering the Defendant liable for punitive damages to be decided by the court pursuant to 15 U.S.C. § 1681n.

58. In the alternative, Defendant was negligent, which entitles the Plaintiffs and each Class member to recover actual damages under 15 U.S.C. § 1681o.

59. The Plaintiffs and each Class member are entitled to recover statutory damages up to $1,000, punitive damages, costs, and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to § 1681n and or § 1681o.

### Claim II: Violations of the Fair Credit Reporting Act (class claim)
### 15 U.S.C. § 1681i(a)(2)

60. The foregoing facts establish that the Defendant willfully violated 15 U.S.C. § 1681i(a)(1) as to the Plaintiffs and to the Class members when it failed to promptly provide the Plaintiffs' and Class members' disputes to the furnisher of the social security number information.

61. As a result of Defendant's violations of 15 U.S.C. §1681i, Plaintiffs and each Class member suffered injuries directly traceable to Equifax's refusal to send the disputes to the furnisher, and instead to shift the burden onto the consumers for obtaining third-party proof that Defendants should have obtained from the furnisher, resulting in a delay or refusal to conduct a reinvestigation.

62. Defendant's conduct, actions and inactions were willful, rendering the Defendant liable for punitive damages to be decided by the court pursuant to 15 U.S.C. § 1681n.

63. In the alternative, Defendant was negligent, which entitles the Plaintiffs and each Class member to recover actual damages under 15 U.S.C. § 1681o.

64. The Plaintiffs and each Class member are entitled to recover statutory damages up to $1,000, punitive damages, costs, and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to § 1681n and or § 1681o.

### Claim III:  Violations of the Fair Credit Reporting Act (class claim)
### 15 U.S.C. § 1681i(a)(4)

65. The foregoing facts establish that the Defendant willfully violated 15 U.S.C. § 1681i(a)(4) as to the Plaintiffs and to the Class members when it failed to consider and review the information in Plaintiffs' and Class members' disputes and to correct the inaccurate information in its files.  Specifically, Defendant failed to read and consider the Plaintiff's and Class members disputes that they are not dead.  If it had it would have not asked for information about social security benefit information which is inapplicable to whether the consumer has a deceased social security number.

66. As a result of Defendant's violations of 15 U.S.C. §1681, Plaintiffs and each Class member suffered injuries directly traceable to Equifax's refusal to investigate, by Equifax's improper shifting of the responsibility to the consumer to assure its social security information was maximally accurate, and by delaying the reinvestigation of the consumer's disputes while the erroneous and harmful information remained on their consumer reports.

67. Defendant's conduct, actions and inactions were willful, rendering the Defendant liable for punitive damages to be decided by the court pursuant to 15 U.S.C. § 1681n.

68. In the alternative, Defendant was negligent, which entitles the Plaintiffs and each Class member to recover actual damages under 15 U.S.C. § 1681o.

69. The Plaintiff and each Class member are entitled to recover statutory damages up to $1,000, punitive damages, costs, and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to § 1681n and or § 1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Jorge Alberto Hernandez, Djurayeva Mukaddas and Sylwia Cieplinska respectfully request certification of a class of consumers defined herein, and entry of judgment against Defendant for the following:

A. Statutory damages pursuant to 15 U.S.C. §1681n(a)(1)(A);

B. Punitive damages pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§1681n(c) and 1681o(b);

D. Actual damages, in the alternative, for all claims if a class is not certified;

E. Awarding Plaintiffs pre-judgment and post-judgment interest as may be allowed under the law; and

F. Any other relief that this Court deems appropriate.

RESPECTFULLY SUBMITTED,

Dated: March 2, 2020

16

Case 3:20-cv-00128-RJC-DSC   Document 1   Filed 03/02/20   Page 16 of 17

By:*/s/ Dawn McCraw*
Dawn McCraw
Price Law Group, APC
8245 North 85th Way
Scottsdale, AZ 85258
T: 818-600-5515
F: 866-401-1457
*Attorney for Plaintiffs,*
*Jorge Alberto Hernandez,*
*Djurayeva Mukaddas, Sywia Cieplinski*
17

Case 3:20-cv-00128-RJC-DSC   Document 1   Filed 03/02/20   Page 17 of 17